Roger A. HEALD et al.

v.

SCHOOL ADMINISTRATIVE
DISTRICT NO. 74.

Supreme Judicial Court of Maine.

May 5, 1978.

Sanborn, Moreshead, Schade & Dawson by Lee K. Bragg (orally), Richard B. Sanborn, Augusta, for plaintiffs.

Perkins & Townsend by Warren C. Shay, George W. Perkins (orally), Skowhegan, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, DELAHANTY and GODFREY, JJ.

POMEROY, Justice.

This action was brought after an election, held in November of 1974, in the towns of Anson, Solon, New Portland, and Emden, comprising School Administrative District No. 74 (S.A.D.). The election was held to provide authorization to the School District Board of Directors for the issuance of bonds to cover the costs of building a new high school in the S.A.D. The bond issue was passed by a sizeable majority.

Shortly after the election, however, a number of voters in the S.A.D. became concerned that the passage of the bond issue had resulted from certain alleged misrepresentations made in pre-election "informational" meetings by the Superintendent and various Board members of the district. Seeking reconsideration of the bond issue, these voters circulated petitions to be presented to the Board. The petitions eventually were signed by voters comprising ten percent of the number of voters in the S.A.D. who had voted in the last gubernatorial election. After receiving the petition, however, the Board refused to hold another election.

Upon this refusal, the named plaintiffs, a majority[1] of whom had signed the petitions, brought a complaint in Superior Court seeking equitable relief. This appeal follows entry of the Superior Court's judgment denying the relief requested.

We dismiss the appeal.

The plaintiffs below requested that the directors and the district be compelled to resubmit the bond issue to the voters in the S.A.D. They cited 20 M.R.S.A. § 225(2)(A)[2] as support for their request, claiming that a new election is required under the terms of the statute. Plaintiffs also sought injunctive relief against the taking of any steps by the S.A.D. in furtherance of the bond issue until a new election be held. Finally, plaintiffs requested a declaratory judgment that the prior election was invalid because of the alleged misrepresentations, various irregularities of the election procedure, and because no vote had been taken to accept a gift of the land on which the school was to be built.

The court below found that 20 M.R.S.A. § 225(2)(A) was not a recall statute and did not require a new election. The court further found that no misrepresentations had been made and that the irregularities complained of related only to form, not to substance. Finally, it found that no vote need be taken to accept the land prior to the bond election. Accordingly, the court refused to compel another election, to grant the injunction or to declare that the election was invalid.

We intimate no opinion on the correctness of the court's reasoning. We find,

---

1. Of the named plaintiffs, only the names of Robert Denthy and Dart Wilkens did not appear on the petitions. The significance of this omission will be discussed below.

2. *20 M.R.S.A. § 225(2)(A)* provides in pertinent part:

"When requested by 10% of the number of voters voting for the gubernatorial candidates at the last statewide election in the municipalities comprising the district, the directors shall call a district meeting, placing before the voters the specific school construction article which has been requested by the petitioners."

rather, that the plaintiffs had no standing[3] to bring their complaint and we, therefore, do not reach the merits, except insofar as they relate to the issue of standing.

▮ This Court has long recognized that individual members of the public may, under certain circumstances, vindicate public rights in a judicial forum. Thus, when plaintiffs have sustained a direct and personal injury themselves, such persons will be accorded standing to obtain judicial review of matters in the public interest. *Fitzgerald v. Baxter State Park Authority,* Me., 189 A.2d 385 (1978); *McCaffrey v. Gartley,* Me., 377 A.2d 1367 (1977). Similarly, a "person aggrieved" has standing to seek review of an administrative action and simultaneously vindicate public rights where such person has suffered a "particularized injury". *In the Matter of Elizabeth Lappie,* Me., 377 A.2d 441 (1977), and cases cited therein.

▮ Where a plaintiff cannot establish direct injury, however, this Court has recognized his standing under certain circumstances. Where a plaintiff alleges himself to be a taxpayer of a municipality or district, he has been held to have standing insofar as he seeks preventive, rather than remedial, equitable relief. *Cohen v. Ketchum,* Me., 344 A.2d 387 (1975); *Blodgett v.*

*School Administrative District No. 73,* Me., 289 A.2d 407 (1972); *Tuscan v. Smith,* 130 Me. 36, 153 A. 289 (1931); *Eaton v. Thayer,* 124 Me. 311, 128 A. 475 (1925). We must now decide whether the plaintiffs in the instant case have demonstrated a direct and personal injury sufficient to give rise to standing. If they have not done so, we must then determine whether the plaintiffs fit within the taxpayer cases entitling them at least to the preventive relief which they seek.

The plaintiffs have alleged here that they are "voters" in and "inhabitants" of the towns which comprise the S.A.D. We first address ourselves to the question whether these allegations demonstrate direct personal injury. We find that they do not.

▮ Plaintiffs contend that they are statutorily entitled, under 20 M.R.S.A. § 225(2)(A), to a new election on the bond issue. If they were so entitled, then the allegation of voter status, coupled with the fact that most of the plaintiffs had signed the petition requesting action by the Board of Directors of the district,[4] arguably might have demonstrated direct and personal injury.[5] We find, however, that § 225(2)(A) does not require the directors to resubmit the bond issue to election.

---

3. While the issue of standing was not raised at any point during the proceedings below we find it proper to consider the issue here. *See McCaffrey v. Gartley,* Me., 377 A.2d 1367 (1977); *Nichols v. City of Rockland,* Me., 324 A.2d 295, 296 (1974). *Cf. Walsh v. City of Brewer,* Me., 315 A.2d 200 (1974) (facts constituting lack of standing also gave rise to lack of subject matter jurisdiction).

4. We note that the plaintiffs failed to allege that they had signed the petition. The petitions themselves, however, were made part of the record and we see that most of the plaintiffs had signed the petitions. In fact, it was not proven at trial that all of the plaintiffs were indeed voters. We need not decide, however, whether the failure to allege and prove these facts precludes the plaintiffs from establishing standing, in view of our finding that, even had these facts been alleged and proven, plaintiffs would still lack standing.

As regards the two plaintiffs who failed to sign the petition, it is clear that they would not

have standing even under this portion of our analysis. Their lack of standing, however, has no effect on the standing of the other plaintiffs for purposes of this portion of our discussion.

5. In *McCaffrey v. Gartley, supra,* we were faced with plaintiffs who alleged themselves to be voters, property owners and signers of an initiated bill before the legislature. Plaintiffs also had a constitutional right to place their initiated bill before the voters of Maine. This constitutional right, combined with the allegations in the pleadings, resulted in a particularized injury substantial enough to give rise to standing. In the instant case, if § 225(2)(A) were to require the directors to order a new election at the request of 10% of the voters in the district, then those who were voters and signers of the petition might have standing to request the types of relief sought here. Because of our interpretation of § 225(2)(A), however, it is clear that the statute does not confer standing in this case.

The last sentence in § 225(2)(A), the only portion of the statute with which we are here concerned, was enacted in 1973, P.L., c. 571. In a discussion of the sentence prior to its enactment, several members of the House of Representatives expressed concern that the statute conferred the right plaintiffs claim here—namely, that ten percent of the voters could force reconsideration of issues already decided by the directors. That this right was not being conferred, however, is demonstrated by the remarks of Representative Dyar contrasting the language of the sentence with a former proposal which would in fact have created such a right. 1973 *Leg.Rec.* 4863–64. That no such right was intended to exist is further shown by the remarks of Representative Shute, the sentence's proponent, who declared that the sentence was only intended to bring school administrative district laws into conformity with municipal laws. 1973 *Leg.Rec.* 4861.[6] The stated intent of the legislation enacting this sentence is clear. Only when the district directors fail to act on a school construction issue may the voters force consideration of the issue.

This intent is also clear from the terms of the statute itself. The section provides that the school directors "shall be authorized" to call a meeting for the purposes stated in the section. The quoted language does not *require* the directors to call such a meeting. It merely authorizes them to do so at their discretion. The ten percent provision, therefore, merely provides a mechanism whereby voters may insure that certain issues will be considered. To hold that ten percent of the voters could force reconsideration would allow a small minority to interfere, whenever they desired, with decisions approved by a majority of voters. We cannot conceive that the Legislature intended such a result.

Since § 225(2)(A) does not confer any rights on the plaintiffs, they cannot be deemed to have suffered a particularized injury entitling them to standing under the statute. We next turn our attention to whether plaintiffs have established a particularized injury merely from the fact that they are voters. We conclude that they do not.

It is true that as voters the plaintiffs are attempting to contest the validity of an election. At first glance this might seem to give rise to a direct injury in the nature of a loss of a civil right. *See Jones v. Maine State Highway Commission,* Me., 238 A.2d 226, 229 (1962). Upon closer analysis, however, it appears that the assertion here is merely of " 'the right, possessed by every citizen, to require that the Government be administered according to law . . ..' " *Baker v. Carr,* 369 U.S. 186, 208, 82 S.Ct. 691, 705, 7 L.Ed.2d 663, quoting *Fairchild v. Hughes,* 258 U.S. 126, 129, 42 S.Ct. 274, 66 L.Ed. 449 (1922). Such a right does not confer standing. *Baker v. Carr, supra.*

This case is distinguishable from *Jones v. Maine State Highway Commission, supra.* In that case no actual or threatened financial damage was at issue. The only substantial right asserted by the "registered voter and taxpayer" was his right to vote on a specific issue. Here, the plaintiffs have already had their vote. Moreover, the rights asserted here are not so much the plaintiffs' right to vote on their interest in proper election procedures, but are issues of increased tax burdens on the property in the S.A.D. The school funding bond issue vote which plaintiffs are challenging is directly related to plaintiffs' financial interest. Having failed to allege any direct financial injury, the plaintiffs clearly lack standing.

Having satisfied ourselves that plaintiffs have established no direct injury to themselves, we finally turn to the question whether they are at least entitled to preventive relief under the rationale most recently stated in *Cohen v. Ketchum, supra.* We find that the failure to allege taxpayer

---

6. 30 M.R.S.A. § 1912, the legislation referred to by Representative Shute, allows 20% of voters in a municipality to force municipal officers to establish a charter commission as an *alternative* to the officers' establishing such a commission themselves. Thus, voters can require action by the officers only when the officers have failed to act.

status deprives plaintiffs of their right to request even preventive relief.

The entry must be:

Appeal dismissed.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

The case should be dismissed from the Superior Court docket.

ARCHIBALD, J., did not sit.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.